**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

---------------------------------------------------------------x

**PAMELA J. PHILIPS and JAMES PRESTON MILLER :**
**on behalf of themselves and all similarly situated persons,:**

**Plaintiffs,** :

**- against -** : **C.A. No. 05-457-T-DLM**

**OCEAN FINANCIAL CORPORATION AND** :
**HOME LOAN BANK,** :
**Defendants.** :

---------------------------------------------------------------x

**PLAINTIFFS' OBJECTION TO**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Pamela J. Phillips and James Preston Miller, by and through their undersigned counsel, object to Defendants' Motion to Dismiss on the grounds, points and authorities set forth in the accompanying memorandum of law.

Respectfully submitted,

Matthew T. Oliverio, Esquire #3372
Raymond A. Marcaccio, Esquire #3569
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
mto@om-rilaw.com
(401) 861-2900
(401) 861-2922 Fax

**CERTIFICATION**

I hereby certify that a true copy of the foregoing *PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO DISMISS* was mailed, postage prepaid, to the following counsel of record on the 1st day of March, 2006.

Stephen J. MacGillivray, Esquire
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

Paul M. Honigberg, Esquire
Carol E. Elbert, Esquire
Blank Rome LLP
600 New Hampshire Avenue, NW
Washington, DC 20037

Nadine Hendrickson

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **PAMELA J. PHILLIPS, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**OCEAN FINANCIAL CORPORATION AND HOME LOAN BANK,**<br><br>**Defendants.** | **C.A. No. 05-457-T-DLM** |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

**Matthew T. Oliverio (#3372)**
**Raymond A. Marcaccio (#3569)**
**OLIVERIO & MARCACCIO LLP**
**55 Dorrance Street, Suite 400**
**Providence, RI 02903**

**Gary B. Friedman**
**Noah Shube**
**FRIEDMAN & SHUBE**
**155 Spring Street**
**New York, NY 10012**

**David S. Markun**
**MARKUN ZUSMAN & COMPTON**
**17383 Sunset Boulevard, Suite A-380**
**Pacific Palisades, CA 90272**

**March 1, 2006**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

STATEMENT OF THE CASE .......... 2

ARGUMENT .......... 4

I. THE COMPLAINT STATES A CLAIM FOR ACCESSING PROTECTED CONSUMER CREDIT REPORTS WITHOUT A "PERMISSIBLE PURPOSE," IN VIOLATION OF 15 U.S.C. § 1681b .......... 4

A. The FCRA Bans Use Of Consumer Credit Reports For Target Marketing Purposes .......... 4

1. Position of the Federal Trade Commission .......... 5

2. *Cole* and Related Case Law .......... 6

B. Ocean Bank's Solicitation Is Not a "Firm Offer Of Credit" .......... 8

C. This Court Should Decline Defendants' Invitation To Break From The Uniform Interpretation Given The Act By The FTC And All Federal Courts .......... 10

II. THE COMPLAINT ALLEGES A VIOLATION OF § 1681m(d) FOR FAILURE TO MAKE CLEAR AND CONSIPICUOUS DISCLOSURE .......... 11

A. Retroactive Application Of The FACT Act Is Impermissible Under Controlling Precedent .......... 12

B. The General Savings Statute Makes Pre-FACT ACT Violations Enforceable .......... 15

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Cases**

*Accord Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004).......................... 4, 11

*Advance Pharmaceuticals, Inc. v. United States*, 391 F.3d 377, 399 n. 11 (2d Cir. 2004)16

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 207, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988)........................................................................................ 12

*Chevron U.S.A., Inc. v. Natural Resources Defense Counsel*, 467 U.S. 837, 104 S. Ct. 2778 (1984)........................................................................................ 11

*Educadores Puertorriquenos En Accion v. Hernandez*, 367 F.3d 61, 62 (1st Cir. 2004) .. 8

*Fisher v. Finance America, LLC*, Case No. SACV 05-0888 CJC (RNBx), slip op. (C.D. Cal. Jan. 24, 2006) ................. 15

*Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992)........................................................................................ 8

*Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S. Ct. 1871 (1997)................. 13

*Hyde v. RDA, Inc.*, 398 F. Supp. 2d 658 (D. Md. 2005)............................................. 8, 11

*Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 841 (5th Cir. 2004) .......... 11

*LaLonde v. Textron, Inc.*, 369 F.3d 1, 6-7 (1st Cir. 2004).................................................. 9

*Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S. Ct. 1483 (1994).................. 12

*Murray v. Cross Country Bank*, No. 05 C 1252, slip op. (N.D. Ill. Aug. 15, 2005)......... 12

*Murray v. Flexpoint Funding Corp.*, No. 05 C 1253, 2005 U.S. Dist. LEXIS 12593, 2005 WL 1463500 (N.D. Ill. June 17, 2005)........................................................ 7, 10

*Murray v. GMAC Mortgage Corp.*, F.3d, Case No. 05-8035, 2006 WL 90081 (7th Cir. Jan. 17, 2006) ............................................................................. 10, 14

*Murray v. GMAC Mortgage Corp.*, 2005 U.S. Dist. LEXIS 28249 (N.D. Ill. August 2, 2005)........................................................................... 8, 10

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006).................................. 10

*Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2005 U.S. Dist. LEXIS 20397, 2005 WL 2284245 (N.D. Ill. September 15, 2005) ...................................................... 8

*Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000)........................................................ 13

*Trans Union Corp. v. Federal Trade Comm'n*, 81 F.3d 228, 234 (D.C. Cir. 1996)...........3

*Trans Union Corp. v. Federal Trade Comm'n*, 245 F.3d 809, 813-14 (D.C. Cir. 2001) ........................................................................................ 4, 6

*United States v. Breier*, 813 F.2d 212, 215 (9th Cir. 1987)............................................ 16

*United States v. Mead Corp.*, 533 U.S. 218, 227-28, 121 S. Ct. 2164 (2001)................. 11

*United States v. Van Horn*, 836 F.2d 1235, 1237 (9th Cir. 1988) .................................. 16

**Statutes**

§ 1681b(a)(3)(A)-(F)........................................................................................ 5

§ 1681b(c)(1)(B)(i) ........................................................................................ 5

1 U.S.C. § 109.............................................................................................. 16

15 U.S.C. § 1681a(l) ....................................................................................... 5

15 U.S.C. § 1681b(a) ...................................................................................... 4

15 U.S.C. § 1681b(c)(1)................................................................................... 9

15 U.S.C. § 1681m(d)..................................................................................... 15

15 U.S.C. § 1681s .......................................................................................... 5

15 U.S.C. §§ 1681a......................................................................................... 1

**Treatises**

5A C. Wright & A Miller, *Federal Practice and Procedure* § 1357 (1990)...................... 8

Plaintiffs Pamela J. Phillips ("Phillips") and James Preston Miller ("Miller") submit this memorandum of law in opposition to the motion of defendants Ocean Financial Corporation and Home Loan Bank (collectively, "Ocean Bank") to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a et seq. (the "FCRA"), a lender such as Ocean Bank may not access a consumer's credit report -- or purchase so-called "prescreening lists," which are culled from those reports based on criteria furnished to a credit reporting agency -- unless it agrees in advance to provide all consumers on the list with a "firm offer of credit." This case concerns the question of whether the "firm offer of credit" requirement of the FCRA is satisfied by an advertising flyer from a home equity lender that contains no firm amount of credit, specifies no interest rate or repayment period, and simply offers one of "[o]ver 70 loan programs for homeowners of all credit levels."

Ocean Bank urges this Court to ignore the interpretation given to the "firm offer of credit" provision of the FCRA by quite literally every court to have considered the issue, including the Seventh Circuit, the D.C. Circuit and numerous district courts, as well as the interpretation of the Federal Trade Commission, which is charged with administering the FCRA and whose considered reading of the statute is legally entitled to substantial deference. All of these authorities, as shown below, recognize that a "firm offer of credit" must provide appreciable value to the consumer; it must include some guaranteed minimum amount of credit, and specify an interest rate, or range of rates, along with other basic terms. Despite the absence of these essential terms, Ocean Bank offers the disingenuous argument that the solicitation

materials it sent to Plaintiffs provide appreciable value, simply because the offers supposedly had a minimum amount, albeit one that was not guaranteed.

Ocean Bank also challenges Plaintiffs' second claim for relief, which alleges that the terms and conditions are not set forth in a "clear and conspicuous" fashion, and violate § 1681m(d) of the FCRA. While the Act was amended, effective December 2004, to provide that the FTC has exclusive jurisdiction to enforce § 1681m(d), that amendment is not entitled to retroactive application under the governing principles of this Circuit.

## STATEMENT OF THE CASE

As alleged in the Complaint, Ocean Bank regularly obtains "prescreening" lists – lists based on data culled from consumer credit reports – from the major consumer reporting agencies, including Experian and Equifax. As defined by the FTC, "[p]rescreening means the process whereby a consumer reporting agency compiles or edits a list of consumers who meet specific criteria and provides this list to the client [such as Ocean Bank] . . . for use in soliciting these consumers for the client's products or services." *See* 16 CFR Part 600 Appendix, § 6. As the FTC further observes, prescreening is only "permissible under the FCRA if the client agrees in advance that each consumer whose name is on the list after prescreening will receive an offer of credit." *Id.*

Ocean Bank caused both Experian and Equifax to access confidential consumer credit reports on Plaintiffs, without their consent or knowledge. One or both of these agencies provided Ocean Bank with prescreening lists that identified Phillips and Miller as having met Ocean Bank's stated criteria. Neither Phillips nor Miller initiated any transactions or communications with Ocean Bank. (*See* Complaint, ¶¶ 17, 21, 22.)

Based on the prescreening lists, Ocean Bank sent Plaintiffs – and, on information and belief, all other consumers on the list – flyers substantially in the forms attached to the Complaint. The Flyer is in the nature of a typical direct mail advertising solicitation. In the familiar fashion of all such junk-mail come-ons, each iteration of the Flyer entreats the consumer to call to "**save hundreds of dollars or more each month**," to "**Receive Extra Cash NOW**," and to receive a free gift. (Compl., Exhs. A and B.) There is no mention of any particular interest rate, or even a range of interest rates. Nor is there mention of a repayment period, or the method of calculating interest, or the amount of equity or collateral required. And, notwithstanding the Flyer's bold print offer of "**$10,000 and you may be eligible for up to $500,000 or more**," in reality there is no minimum loan amount offered as the small print on the back of the flyers declare that sum is not "guaranteed" to the consumer. (*See* Compl. Exh. B, at 2.)[1]

The plain reality is that the Flyer is an advertisement – a solicitation entreating the consumer to submit an application for credit – and nothing more. Rather than expend many millions of dollars and send these come-ons to people who may not have any interest in its products, Ocean Bank engages the credit reporting agencies to cull lists of targets for its marketing efforts. This is "target marketing," pure and simple. And, as shown below, buying or selling "consumer reports for target marketing violates the Act." *See Trans Union Corp. v. Federal Trade Comm'n*, 81 F.3d 228, 234 (D.C. Cir. 1996) ("*Trans Union I*").

Furthermore, the Flyer fails to make the disclosures required by § 1681m(d) in a "clear and conspicuous" manner. Ocean Bank places the disclosures on the reverse side of the Flyer in non-bolded print, but makes no reference to them on the front of the solicitation. Most of the

---

[1] In the case of Phillips, the flyer offered "**$25,000, $50,000, $100,000** or more," with the same hollow assurance. (Compl. Exh. A.)

back-side of the Flyer is empty white space, and there is no attempt (e.g. enlarged or bolded type) to draw attention to the mandated disclosures. In stark contrast, the front of the Flyer makes liberal use of bolded and oversized font.

## ARGUMENT

### I. THE COMPLAINT STATES A CLAIM FOR ACCESSING PROTECTED CONSUMER CREDIT REPORTS WITHOUT A "PERMISSIBLE PURPOSE," IN VIOLATION OF 15 U.S.C. § 1681b

As shown below, Ocean Bank's "target marketing" activities here are decidedly not a "permissible purpose" for accessing a consumer credit report under the FCRA. Prescreening is only legal under the FCRA where the lender agrees in advance that it will make a guaranteed offer of credit to all consumers that meet the specified criteria. The sale or purchase of such target lists based on consumer credit reports for mere marketing purposes – i.e., for the purposes of sending out flyers or other solicitations to a whittled-down group of potential customers, as opposed to sending out guaranteed offers of credit – is a clear violation of the FCRA. As courts have uniformly held, "selling consumer reports for target marketing violates the Act." *Trans Union I*, 81 F.3d at 233-34; *Trans Union Corp. v. Federal Trade Comm'n*, 245 F.3d 809, 813-14 (D.C. Cir. 2001) ("*Trans Union II*"). *Accord Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004).

#### A. The FCRA Bans Use Of Consumer Credit Reports For Target Marketing Purposes

The FCRA enumerates a comprehensive and exclusive list of the permissible purposes for which consumer credit reports may be accessed. *See* 15 U.S.C. § 1681b(a) ("subject to subsection (c) of this section, any consumer agency may furnish a consumer report under the following circumstances and no other") (emphasis added). For the most part, the permissible

purposes are transactions initiated by consumers; where a consumer applies for credit, employment or insurance, for example, the reporting agency may release the consumer's report. *See id.*, § 1681b(a)(3)(A)-(F).

Section 1681b does, however, provide for certain limited situations in which a consumer credit report may be accessed even though the consumer did not initiate the transaction or otherwise authorize the release of her credit report. The only such provision relevant here is § 1681b(c)(1)(B)(i), which provides that agencies may release protected information for the purpose of extending a "firm offer of credit or insurance." The term "firm offer of credit or insurance" is defined to mean "any offer of credit or insurance that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l).

In enacting this provision, Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." *See* S. Rep. No. 103-209, 13 (1993), quoted in *Cole*, 389 F.3d at 725. "In exchange for allowing credit and insurance providers to obtain lists based on more sensitive information . . . the bill requires that the credit or insurance provider make a 'firm offer,' as defined in section 101 of the Committee bill, of credit or insurance to all consumers on the list." *Cole*, 389 F.3d at 725 (citing S. Rep. No. 103-209 at 14).

### 1. <u>**Position of the Federal Trade Commission**</u>

The Federal Trade Commission is charged with broad enforcement and rule-making authority under the FCRA. *See* 15 U.S.C. § 1681s. Discharging that authority, the FTC has emphasized that "[p]rescreening is permissible under the FCRA if the client [i.e., the lending institution] agrees in advance that each consumer whose name is on the list after prescreening

will receive an offer of credit." 16 CFR Part 600 Appendix, § 7. Commenting on the precise matter at issue here, the FTC has observed:

> [t]he FCRA recognizes that such offers provide something of value to consumers, in return for which many consumers will be willing to yield a degree of privacy. * * * When Congress provided in the FCRA that firm offers of credit constitute a permissible purpose but failed to create a permissible purpose for those engaged only in target marketing, Congress determined that "people are more willing to reveal personal information in return for guaranteed offers of credit than for catalogs and sales pitches.

Amicus Curiae Brief of Federal Trade Commission in *Cole v. U.S. Capital*, *supra*, at 22-23, attached as Exhibit 2 to Shube Decl. (quoting *Trans Union Corp. v. Federal Trade Comm'n*, 267 F.3d 1138, 1142 (D.C. Cir. 2001) (emphasis added).

As the FTC further opined, in a passage adopted by the Seventh Circuit in Cole, "[i]f the important privacy protections of the FCRA are to retain their vitality, users of consumer reports information must not be permitted to evade them through the use of sham offers of credit that have no appreciable economic value to consumers." *Id.*, Shube Decl. Ex. 2 at 23; *Cole*, 389 F.3d at 728, n.8.

### 2. ***Cole* and Related Case Law**

The federal courts have likewise understood the "firm offer of credit" provision to require that lenders may not access consumer credit reports unless they are prepared to guarantee to each consumer on the prescreening list "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Cole*, 389 F.3d 726.

In *Cole*, the defendant lender argued that "the FCRA does not require a minimum amount of credit to be offered, and therefore the preapproval could be for any amount, perhaps even as low as $1." 389 F.3d at 726-27. The Seventh Circuit roundly rejected that argument:

> [S]uch a definition would permit anyone to gain access to a sea of sensitive consumer information simply by offering some nominal amount of guaranteed credit. . . The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation. It is clear that Congress did not intend to allow access to consumer credit information "for catalogs and sales pitches." *Trans Union Corp.*, 267 F.3d at 1143. Such importuning simply--and understandably--is not among the permissible reasons for which a credit agency may disclose a consumer's credit information.

*Id.* (emphasis added).

Accordingly, the Seventh Circuit held that the "district court's focus on whether the offer would have been honored was inappropriately narrow," and it cautioned that where a putative "offer" is, in fact, "a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." *Id.* at 727-28. The court further held that, "in making this assessment," courts must evaluate the "amount of credit to be extended," as well as other key terms such as interest rate and repayment period: "The terms of an offer, such as the rate of interest charged, the method of computing interest and the length of the repayment period, may be so onerous as to deprive the offer of any appreciable value." *Id.* at 728.

In the *Cole* case itself, the putative "offer" was for an automotive loan in the minimum guaranteed amount of $300. *Id.* at 723. Other courts have applied Cole to putative "offers" that contain a variety of terms. *See Murray v. Flexpoint Funding Corp.*, No. 05 C 1253, 2005 U.S. Dist. LEXIS 12593, 2005 WL 1463500 (N.D. Ill. June 17, 2005) (upholding complaint based on solicitation for home equity loan, which specified 5.75% interest rate but contained no guaranteed minimum and was subject to change); *Murray v. GMAC Mortgage Corp.*, 2005 U.S.

Dist. LEXIS 28249 (N.D. Ill. August 2, 2005) (upholding complaint based on solicitation for home equity loan with no minimum guaranteed amount); *Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2005 U.S. Dist. LEXIS 20397, 2005 WL 2284245 (N.D. Ill. September 15, 2005) (upholding complaint based on solicitation for automotive loan that stated minimum guaranteed amount was "up to $19,500").

Likewise, in *Hyde v. RDA, Inc.*, 398 F. Supp. 2d 658 (D. Md. 2005), the District of Maryland recently applied *Cole* to deny a motion to dismiss a complaint under the FCRA where the flyer promised "you are guaranteed to receive a loan of a minimum of $300" in automotive financing. In denying the motion and following *Cole*, the court stressed the small loan amount and the failure of the flyer to "specify an interest rate or range of interest rates . . . [or] mention a repayment period."

**B. Ocean Bank's Solicitation Is Not a "Firm Offer Of Credit"**

Measured against the standards set forth above, Ocean Bank cannot establish that its solicitation meets the definition of a "firm offer of credit" within the meaning of the FCRA. Such a determination is particularly inappropriate at the pleading stage, when all factual averments of the complaint must be accepted as true, and all reasonable inferences must be drawn in the Plaintiffs' favor. *See Educadores Puertorriquenos En Accion v. Hernandez*, 367 F.3d 61, 62 (1st Cir. 2004). Except in limited circumstances, not present here, all that is required is "'a generalized statement of facts from which the defendant will be able to frame a responsive pleading.'" *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992) (quoting 5A C. Wright & A Miller, *Federal Practice and Procedure* § 1357 (1990)). Where a defendant is placed on notice of the charges implicated in a lawsuit, dismissal is improper, and a defendant cannot seek dismissal to foreclose discovery, which may yield

evidence to support a plaintiff's claims. *See LaLonde v. Textron, Inc.*, 369 F.3d 1, 6-7 (1st Cir. 2004).

Moreover, the Flyer is indisputably not a "firm offer of credit" within the meaning of the FCRA. Rather, the direct mail Flyer is a paradigmatic expression of the target marketing that Congress intentionally excluded from the permissible purposes enumerated in the FCRA. *See Trans Union I*, 81 F.3d at 232. As discussed above in the Statement of the Case, Ocean Bank's Flyer did not establish an interest rate or range of interest rates, or mention a repayment period. The absence of these key terms makes the solicitation one "without value" and merely an "advertisement or solicitation." Because it is devoid of operative terms, Ocean Bank's solicitation was merely a "sales pitch" of the type that *Cole* found improper. *See Cole*, 389 F.3d at 726-27.

Ocean Bank, implicitly acknowledging that its solicitation lacks the value adding terms that the *Cole* court set forth, attempts to justify this deficiency by claiming that it is more difficult to provide these details for mortgage loans than it is for other types of credit transactions. This unsupported averment cannot be sustained under the plain language of the FCRA, which broadly applies to "*any* credit . . . transaction that is not initiated by the consumer . . . ." 15 U.S.C. § 1681b(c)(1) (emphasis added). It does not differentiate between home equity loans and other types of credit products. Ocean Bank seizes upon this false distinction, already tenuous, and seeks to extend it even further in an attempt to distinguish *Cole*. Ocean Bank claims that *Cole* is inapposite because that case involved automotive credit, whereas this case involves home equity lending. The distinction is a fallacy. The defendant lender in *Cole*, Capital USA, sent out its flyer as an advertisement to help it sell credit products, which is exactly what Ocean Bank is doing here.

Moreover, the Seventh Circuit recently addressed the significance of *Cole*, specifically in the home equity context in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). *Murray*, like this case, arose from solicitations for mortgage loans: "[Defendant] offered the recipients first-mortgage loans, so that they could draw cash against the equity in their homes. Because the loan could not exceed the unencumbered portion of the property's market price, however, not all consumers would find the opportunity valuable." *Id.* at 955. The Seventh Circuit did not hesitate in applying the *Cole* standards: "To decide whether [a defendant] has adhered to the statute, a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), and whether the terms are honored when consumers accept." *Id.* at 956. Other district courts have applied *Cole* in the home equity loan situation, even before the Seventh Circuit's *Murray* opinion. *See Murray v. Flexpoint Funding Corp.*, 2005 U.S. Dist. LEXIS 12593, 2005 WL 1463500; *Murray v. GMAC Mortgage Corp.*, 2005 U.S. Dist. LEXIS 28249.

For all of these reasons, and because of all the contingencies set forth above, the Flyer clearly does not qualify as a firm offer of credit.

### C. This Court Should Decline Defendants' Invitation To Break From The Uniform Interpretation Given The Act By The FTC And All Federal Courts

Stripped to its essence, Ocean Bank's argument is that even a sham offer may constitute a "firm offer" under the Act, so long as it "will be honored." Ocean Bank's real argument, whether it acknowledges it or not, is that pure target marketing is a permissible purpose under the FCRA.

Certainly, there is nothing in the plain language of the statute that compels such a result, which is irreconcilable with the Seventh Circuit's decisions in *Cole* and *Murray*, the D.C.

Circuit's decisions in *Trans Union I* and *II*; the District of Maryland's decision in *Hyde* and, indeed, every judicial decision to take up the question. Moreover, Ocean Bank's position flies in the face of the unswerving interpretation given to the statute by the FTC, which is charged with administering the FCRA, and whose interpretations are entitled to substantial deference. *See United States v. Mead Corp.*, 533 U.S. 218, 227-28, 121 S. Ct. 2164 (2001); *see generally Chevron U.S.A., Inc. v. Natural Resources Defense Counsel*, 467 U.S. 837, 104 S. Ct. 2778 (1984). And towards those ends, courts are absolutely right to require a statement of such basic terms as minimum guaranteed amount, interest rate, or range and time period for repayment. *See, e.g.*, *Hyde v. RDA, Inc.*, 398 F. Supp. 2d at 665; *Cole*, 389 F.3d at 728.

The only authority that Ocean Bank offers in urging the unprecedented departure from applicable "firm offer" case law is *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 841 (5th Cir. 2004). *Kennedy* is far from determinative. The facts of *Kennedy* vary in a number of significant ways. That case involved a husband and wife who received a pre-approved credit card offer, and who both responded by filling out and returning an application form, specifically authorizing the defendant to access their credit information.

## II. THE COMPLAINT ALLEGES A VIOLATION OF § 1681m(d) FOR FAILURE TO MAKE CLEAR AND CONSIPICUOUS DISCLOSURE

Ocean Bank also moves to dismiss Plaintiffs' claim under § 1681m(d), which requires that the requisite statutory disclosures be set forth in a "clear and conspicuous" fashion. Ocean Bank bases its motion on recent amendments to the FCRA, which were implemented by the Fair and Accurate Credit Transactions Act of 2003 (the "FACT Act"), which took effect in December 2004.

According to Ocean Bank, the FACT Act eliminates a private right of action for violations of the "clear and conspicuous" requirement of the FCRA. However, even assuming that Ocean Bank's interpretation of the amended statute is correct -- i.e., even accepting fully the analysis of the district court in *Murray v. Cross Country Bank*, No. 05 C 1252, slip op. (N.D. Ill. Aug. 15, 2005), and as adopted by other courts – it cannot take advantage of this change in the law to require dismissal of the "clear and conspicuous" FCRA claims to the extent the events underlying that claim took place before the enactment of the FACT Act, which may not be applied retroactively, under controlling principles of law. Because the violations of § 1681m(d) consist in the preparation of a Flyer that contains inadequate disclosures – and because it is not clear in the absence of discovery when that Flyer was prepared – Ocean Bank's motion to dismiss this claim should be denied.

### A. Retroactive Application Of The FACT Act Is Impermissible Under Controlling Precedent

As the Supreme Court has repeatedly held, "the presumption against retroactive legislation is deeply rooted in our jurisprudence." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S. Ct. 1483 (1994); *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 207, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988)). "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 488 U.S. at 208 (emphasis added).

Under the test enunciated in *Landgraf*, a court first examines the statutory text to determine if the legislature has expressly defined the statute's reach. *Landgraf*, 511 U.S. at 280. If the statute does not have an express statement, a court proceeds to the second prong of the *Landgraf* test, under which the court determines "whether the new statute [or amendment] would

have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*

Where a statutory amendment eliminates or adds a private cause of action altogether, this standard clearly militates against giving retroactive application to the amendment. In *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S. Ct. 1871 (1997), for example, the Supreme Court held that a 1986 amendment to the False Claims Act, which altered the scope of the private right of action provisions of that statute, would have an impermissible retroactive effect if applied to pre-1986 conduct. *Hughes*, 520 U.S. at 941-42, 950. The amendment at issue removed a bar to qui tam suits under the False Claims Act, extending "an FCA cause of action to private parties in circumstances where the action was previously foreclosed." *Id.* at 949. The *Hughes* court observed that "in permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially created a new cause of action, not just an increased likelihood that an existing cause of action will be pursued." *Id.* at 950.

Another case in point is the Ninth Circuit's decision in *Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000), which concerned an amendment to the Private Securities Litigation Reform Act (the "PSLRA") that eliminated the right of private plaintiffs to pursue RICO claims under the PSLRA. The *Scott* court determined, first, that Congress did not expressly provide for retroactive application of the amendment. 215 F.3d at 944. Next, applying the second prong of *Landgraf*, it held that the repeal of the private cause of action would indeed have a "retroactive effect" on the rights of plaintiffs: "Taking away a plaintiff's right to a remedy under RICO would have the [required retroactive] effect." 215 F.3d at 947. The court observed, in this connection,

that "the PSLRA in fact eliminates RICO as a cause of action." *Id.* Accordingly, the court "conclude[d] that the RICO amendment has retroactive effect" and it held:

> Because we have found that Congress has not expressly provided the statute's temporal reach and that the statute has retroactive effect, the presumption against retroactivity applies unless Congress's intent to the contrary is clear. *See Landgraf*, 511 U.S. at 280. Our analysis persuades us that there is no clear congressional intent to apply the RICO amendment retroactively.

*Id.*

Under these standards, retroactive application of FACT Act would clearly be impermissible. Assuming *arguendo* that Congress eliminated a private right of action under § 1681m(d), effective December 2004, it is clear that "Congress has not expressly provided the statute's temporal reach" and that application of the statute would have a "retroactive effect." *Scott*, 215 F.3d 947; *see also Hughes* 520 U.S. at 951-52. Nor, as in *Scott*, can Ocean Bank point to anything in the legislative history to overcome the presumption against retroactive application. Indeed, the contrary is true. Congress provided that FACT Act would become effective on a delayed schedule, which is hardly consistent with an intention to allow for retroactive application. Pub. L. No. 108-159, § 3.

The Seventh Circuit's *Murray* decision is consistent with the above analysis. Addressing the FACT Act amendments to the FCRA, the Seventh Circuit recently wrote:

> A recent amendment to the Act abolishes private remedies for violations of the clear-disclosure requirement, which in the future will be enforced administratively, but that change does not apply to offers made before its effective date and thus does not affect this litigation. See 117 Stat. 1952, adding 15 U.S.C. §1681m(h)(8).

*Murray*, 2006 WL 90081, at *1.

A recent decision by the Central District of California, guided by the above retroactivity analysis and the Seventh Circuit's *Murray* decision, came to the same conclusion: "For the

foregoing reasons, the Court holds that FACTA § 311(a) would have a retroactive effect if applied to this case. . . . FACTA § 311(a) does not bar Plaintiff's claim under 15 U.S.C. § 1681m(d)." *Fisher v. Finance America, LLC*, Case No. SACV 05-0888 CJC (RNBx), slip op. at 15 (C.D. Cal. Jan. 24, 2006). The *Fisher* court reached this conclusion, notwithstanding the argument that the action was filed after the effective date of the FACT Act – the same argument that Ocean Bank makes here. That court wrote:

> Indeed, to use the filing date as the relevant date for purposes of the retroactivity analysis would run afoul of the concerns that motivated *Landgraf*'s holding. If the filing date were the only relevant date for an amendment expanding the universe of plaintiffs who could sue under a particular statute, a defendant who had engaged in conduct before the statute was enacted, but who is sued after enactment, would suddenly be subject to liability much greater than the potential liability existing at the time it engaged in the conduct. This would contravene the primary consideration behind the presumption against retroactivity – i.e. the "unfairness of imposing new burdens on persons after the fact." *Landgraf*, 511 U.S. at 270-71. In short, the Court rejects Defendant's argument that the filing date is the pertinent one for purposes of the retroactivity analysis.

*Id.* at 11-12.

Accordingly, there is no basis for giving retroactive application to the FACT Act and Ocean Bank's motion should be denied.

### B. The General Savings Statute Makes Pre-FACT ACT Violations Enforceable

In addition to the U.S. Supreme Court's *Landgraf* test, the General Savings Statute, 1 U.S.C. § 109, provides a further, independent basis for denying Defendants' motion. Section 109 of the General Savings Statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

Although the "savings clause on its face applies to the 'repeal of any statute,' it has been held to apply to statutory amendments as well." *United States v. Breier*, 813 F.2d 212, 215 (9th Cir. 1987). It is also clear the General Savings Clause applies to civil penalties and forfeitures, just as it applies to criminal liability. *Landgraf*, 511 U.S. at 271-72; *Advance Pharmaceuticals, Inc. v. United States*, 391 F.3d 377, 399 n. 11 (2d Cir. 2004); *United States v. Van Horn*, 836 F.2d 1235, 1237 (9th Cir. 1988) (finding "no authority for the proposition that 1 U.S.C. § 109 does not apply to civil penalties and forfeitures in the same manner as to criminal fines and forfeitures").

Under the clear and literal terms of the General Savings Clause, the repeal of the private right of action for violations of § 1681m(d) -- assuming *arguendo* that private right was repealed -- shall not release any "liability incurred under such statute, unless the repealing Act shall so expressly provide." Accordingly, for this reason as well as the principles set forth in *Landgraf*, Ocean Bank's motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit that Ocean Bank's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) should be denied in its entirety.

DATED: March 1, 2006

Respectfully submitted,

Matthew T. Oliverio, Esquire #3372
Raymond A. Marcaccio, Esquire #3569
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
mto@om-rilaw.com
(401) 861-2900
(401) 861-2922 Fax

## CERTIFICATION

I hereby certify that a true copy of the foregoing *PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS COMPLAINT* was mailed, postage prepaid, to the following counsel of record on the 1st day of March, 2006.

Stephen J. MacGillivray, Esquire
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

Paul M. Honigberg, Esquire
Carol E. Elbert, Esquire
Blank Rome LLP
600 New Hampshire Avenue, NW
Washington, DC 20037